IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIM L. M., | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-CV-418-FHM |
| | ) | |
| Andrew M. Saul,[1] Commissioner of Social Security, | ) ) ) | |
| | ) | |
|       Defendant. | ) | |

## OPINION AND ORDER

Plaintiff, KIM L. M., seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1] Effective June 17, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff Kim L. M.'s application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) John W. Belcher was held March 29, 2017. By decision dated June 7, 2017, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on June 10, 2018. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff was 53 years old on the alleged date of onset of disability and 60 years old on the date of the denial decision. She has a two year college degree in secretarial science and past relevant work includes a bus driver. [R. 40, 217]. Plaintiff claims to have been unable to work since January 12, 2010 due to pain in back, neck, and shoulders, three knee surgeries, severe anxiety, high blood pressure, irregular heartbeat, and Rheumatoid arthritis. [R. 194].

## The ALJ's Decision

The ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of lumbar spine, derangement of the bilateral knees, obesity, depression disorder, and anxiety disorder. [R. 12]. The ALJ determined that the Plaintiff has the residual functional capacity to perform light work except Plaintiff can stand or walk for 4 out of 8 hours, sit for 6 hours. She can occasionally climb, bend, stoop, kneel, crouch, crawl, and can frequently balance and kneel. Plaintiff is limited to simple, routine, and multi-step tasks and can perform some complex tasks. [R. 14]. The ALJ determined at step four that Plaintiff could perform her past relevant work as a bus driver as she actually performed it. [R. 17]. The ALJ made alternative findings for step five of the sequential evaluation process that based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 17-18]. The case was thus decided at step four of the five-step evaluative sequence for determining whether a claimant is disabled with an alternative step five finding. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to follow the law at Step Four of the sequential evaluation test; 2) the RFC assessment is not supported by substantial evidence; 3) credibility findings are not supported by substantial evidence; 4) failed to develop and follow vocational expert witness testimony; and 5) the decision in this case was rendered by an Administrative Law Judge whose appointment was invalid at the time he rendered his decision. [Dkt. 13, p. 4].

## Analysis

Step Four Evaluation

Plaintiff argues that the ALJ failed to address the mental and physical demands of her past relevant work as required by *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996). [Dkt. 13, p. 4-6]. Plaintiff contends that the ALJ made no attempt to perform any of the requirements at phases two and three of the step four analysis. [Dkt. 13, p. 6]. Specifically, Plaintiff claims that the ALJ erred by finding her capable of performing her past relevant work as a bus driver even though that job is listed as medium work in the *Dictionary of Occupational Titles* (DOT 913.463-010). [Dkt. 13, p. 4]. Further, Plaintiff worked as a bus driver prior to her four back and knee surgeries which should bring into question her ability to safely transport the children with her pain and limited mobility. [Dkt. 13, p. 5].

The Tenth Circuit has developed a three-phase test for assessing a claimant's ability to perform past relevant work. See *Winfrey*, 92 F.3d at 1023-25. First, the ALJ must make findings regarding the claimant's residual functional capacity. See *id.* at 1023. Second, the ALJ must assess the mental and physical demands of the claimant's past relevant work. See *id.* at 1024. Third, the ALJ must make specific findings regarding the plaintiff's ability to perform his past relevant work based on the findings from phases one and two. See *id.* at 1025.

In compliance with *Winfrey,* the ALJ completed phase one when he determined Plaintiff's RFC was limited light work. [R. 14]. Phase two requires the ALJ to obtain "adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting *SSR* 82-62). With respect to

4

physical limitations, a determination of the Plaintiff's ability to do past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles,* etc., on the requirements of the work as generally performed in the economy. *SSR* 82-62. The regulations provide that the ALJ can obtain this information from a number of sources, including the plaintiff, the testimony of a vocational expert, or the *Dictionary of Occupational Titles*. *See* 20 C.F.R. § 404.1560(b)(2).

In this case, at the hearing, the ALJ and vocational expert asked Plaintiff specific questions about the physical and mental demands of her past relevant work as a daycare operator and bus driver, including how much weight she lifted, what her duties entailed, and whether she used office equipment such as a computer. [R. 59-66]. The vocational expert testified that Plaintiff could perform her past relevant work as a bus driver as she actually performed it but not as generally performed. [R. 65]. In his decision, the ALJ made specific findings relying on this testimony. [R. 17]. Under *Winfrey*, then, the ALJ met his obligation to assess the demands of Plaintiff's past relevant work and determined that Plaintiff retained the residual functional capacity to perform that work.

Residual Functional Capacity

Plaintiff argues that the ALJ's RFC determination is not based on substantial evidence. Plaintiff contends that she is not able to perform the duties of substantial gainful activity in that she is unable to perform work on a sustained basis for 8 hours in an eight-hour workday. [Dkt. 13, p. 7-8]. Further, Plaintiff is limited due to the restrictions from pain and limited mobility after her several knee and back surgeries. That is the extent of Plaintiff's claim.

Plaintiff's hint of an argument fails to develop a sufficient legal or factual basis for reversal, and the court will not speculate or develop appellate arguments on her behalf. See *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003). Plaintiff fails to cite or point to any evidence that shows a compounding effect on any of her conditions or supports her conclusion that she is unable to engage in substantial gainful activity for an 8-hour workday. Finally, Plaintiff fails to explain why reversal is warranted. Since Plaintiff has not explained why she thinks there was an error, she has waived appellate consideration of this issue. *See Keyes-Zachary v Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those ...contentions that have been adequately briefed for our review.") *citing Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)("The scope of our review . . . is limited to the issues the claimant . . . adequately presents on appeal."(internal quotation marks omitted)). In the face of such waiver, the court declines to address this issue.

Credibility

Plaintiff argues that the ALJ did not prepare in-depth credibility findings that comply with the requirements of Social Security Rulings and the case law of the Tenth Circuit. Plaintiff contends that the ALJ's analysis of her testimony was inaccurate and focused only on her activities of daily living. The court does not agree.

Although the Social Security Administration has eliminated the use of the term "credibility" from the agency's sub-regulatory policy, the agency continues to evaluate a disability claimant's symptoms using a two-step process: First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . . Soc. Sec. Ruling (*SSR*) 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 at 2 (Mar. 16, 2016) (superseding *SSR* 96-7p; Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996)). The two-step process substantially restates the prior two-step process set forth in *SSR* 96-7, which was characterized by the Tenth Circuit as a three-step process set forth in *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987), the seminal case regarding credibility followed in the Tenth Circuit. See, e.g., *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012).

At step one of the process, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." *Id.* at 3. At step two, the ALJ may consider, among other things, a number of factors in assessing a claimant's credibility, including the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks and citations omitted); see 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). The court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler*, 68 F.3d at 391). However, credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citations omitted).

The ALJ cited numerous grounds, tied to the evidence, for the credibility finding. The ALJ noted Plaintiff walked to her doctor's appointments.[3] [R. 15]. The ALJ also noted that it was reported Plaintiff walks with a normal gait, her grip and great toe strength was equal bilaterally and rated 5/5. [R. 435]. Medical imaging showed only mild degenerative changes in her knees and her back pain improved with surgery, weight loss, and increased activity. [R. 15, 286-89; 401,431, 532-33]. Further, Plaintiff's allegations of depression

---

[3] The court is cognizant that the ALJ mistakenly noted that Plaintiff walks to the grocery store in addition to her doctor's appointments. [R. 59].

8

disorder and anxiety disorder were inconsistent with the medical evidence. Treatment notes reflected Plaintiff's mood, affect, attention, and concentration were normal; symptoms were controlled by medication and stable; and she was capable of multi-step commands. [R. 15, 401, 408, 444, 450, 478, 496, 504, 556]. The ALJ found Plaintiff's subjective statements about intensity, persistence, and limiting effects of her symptoms were not entirely consistent with medical and other evidence. [R. 15]. The ALJ thus properly linked her credibility finding to the record. Therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

Testimony of the Vocational Expert

Plaintiff argues that at step four the ALJ failed to question the vocational expert regarding a function-by-function comparison of the RFC and Plaintiff's past relevant work as a bus driver. [Dkt. 13, p. 12].

According to Plaintiff's description of her past relevant work as a bus driver, the heaviest weight she lifted was less than 10 pounds. [R. 217, 220]. At the hearing, the vocational expert questioned Plaintiff as to the heaviest weight she lifted and Plaintiff testified she had to raise the hood that was on spring. [R. 63]. In response to the hypothetical question posed by the ALJ, the vocational expert testified that Plaintiff would be able to return to the job of bus driver as she performed it. [R. 65].

Based on the record as a whole, the court is satisfied that the information about Plaintiff's past relevant work provided enough detail for the ALJ to compare the requirements of the work with the RFC. Accordingly, the ALJ appropriately determined that Plaintiff could do her past relevant work and is therefore not disabled.

Plaintiff also argues that the ALJ erred in finding that she was capable of other jobs in significant numbers in the national economy. [Dkt. 13, p. 12-13]. Plaintiff contends she does not have transferrable skills to the jobs of general clerk and administrative clerk because the vocational expert testified the adjustment would be great because of a change of industry tools. [Dkt. 13, p. 13]. Plaintiff relies upon 20 C.F.R. § 404.1568(d) which states:

> (4)Transferability of skills for persons of advanced age. If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s). We will decide if you have transferable skills as follows. If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. (See § 404.1567(a) and § 201.00(f) of appendix 2.) If you are of advanced age but have not attained age 60, and you have a severe impairment(s) that limits you to no more than light work, we will apply the rules in paragraphs (d)(1) through (d)(3) of this section to decide if you have skills that are transferable to skilled or semiskilled light work (see § 404.1567(b)). If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

Plaintiff, who was 60 years old on the date of the denial decision, testified that she previously worked as a daycare owner where she was required to prepare reports. Plaintiff testified that she did not use a computer as a daycare owner, but had learned to use one while attaining her two year secretarial college degree. [R. 40-41, 66]. In response to hypothetical questions posed by the ALJ, the vocational expert identified the light job of general clerk and sedentary job of administrative clerk. [R. 67]. The vocational expert indicated that both of those jobs required the use of a computer, but the general clerk's use of a computer would be more limited. The vocational expert determined that Plaintiff retained skills from her job as a daycare owner that would transfer to other jobs in the national economy which included time management, monitoring and assessment, and reading and writing reports. [R. 17]. Relying on this evidence, the ALJ concluded that Plaintiff was not disabled. An alternative finding to his step four decision, the ALJ found at step five that Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. [R. 17]. Thus, this court finds that the ALJ 's reliance on the vocational expert's testimony was proper.

## Appointments Clause Claim

Plaintiff argues that the ALJ who decided her case was not appointed in compliance with the Appointments Clause of the Constitution.[4] The Commissioner does not dispute

---

[4] The Appointments Clause of the Constitution requires the President "to appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States." U. S. Const. art. II ,§2, cl. 2. It further provides that "Congress may by Laws vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the heads of Departments." *Id*.

that the ALJ was not constitutionally appointed[5] but argues that the court should not consider the argument because Plaintiff did not raise the issue during the administrative proceedings on her claim for benefits. To be clear, the Commissioner does not contend that Plaintiff failed to complete any of the steps in the administrative process. Rather, the Commissioner argues that Plaintiff failed to raise the particular issue during the administrative process.

The Appointments Clause issue has been raised in a number of recent cases in response to *Lucia v. S.E.C.*, – U.S. –, 138 S.Ct. 2044, 2055, 201 L.Ed.2d 464 (2018) which held that the ALJs in the Securities and Exchange Commission (SEC) were not constitutionally appointed. The courts reviewing Social Security decisions where the Appointments Clause issue has been raised mostly find that the issue was forfeited because it was not raised before the Social Security Administration.[6] These cases rely on the general rule that before an issue can be raised on appeal to the courts, it must have first been raised before the administrative agency. They distinguish the result in *Lucia* based on language in that case that one who makes a "timely" challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled

---

[5] For purposes of this brief, Defendant does not argue that SSA ALJs are employees rather than inferior officers. [Dkt. 15, p. 8].

[6] *Fortin v. Comn'r Soc. Sec.*, 2019 WL 1417161 (E.D. NC March 29, 2019)(rejecting magistrate judge's recommendation that court find no forfeiture occurred, finding that *Sims* left open the question of whether judicially created issue exhaustion at the ALJ level makes good sense; noting that Plaintiff in *Fortin* only brought up Appointments Clause issue in supplemental briefing after summary judgment), *Pearson v. Berryhill*, 2018 WL 6436092 (D. Kan. Dec. 7, 2018)(finding 42 U.S.C. § 406(g) contains nonwaivable and nonexcusable requirement that an individual must present a claim to the agency before raising it to the court and finding Plaintiff failed to raise Appointments Clause issue before agency rendered the challenge untimely), *Faulkner v. Commn'r Soc. Sec.*, 2018 WL 6059403 (W.D. Tenn. Nov. 19, 2018)(challenge under Appointments Clause is nonjurisdictional and may be forfeited; challenge forfeited where Plaintiff did nothing to identify challenge before agency and good cause was not shown for failure).

to relief. 138 S.Ct. at 2055. These cases find that the Social Security claimant, having not presented the issue to the administrative agency, has failed to make a timely Appointments Clause challenge. The Commissioner's brief relies on similar arguments.[7]

A small number of cases rely on the Court's analysis in *Sims v. Apfel,* 550 U.S. 103, 105, 120 S.Ct. 2080, 147 L. Ed.2d 80 (2000) and conclude that the Appointments Clause issue was not forfeited.[8] In *Sims* the Supreme Court concluded that Social Security claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. In reaching this conclusion, the Court considered the following factors.[9] First, requirements to exhaust issues are largely creatures of statute and no statute requires issue exhaustion before the Social Security Administration. Second, while it is common for agency regulations to require issue exhaustion, Social Security regulations do not require issue exhaustion. Third, the reasons why courts generally impose issue exhaustion requirements

---

[7] The Commissioner also cites five regulations it contends supports requiring issue exhaustion. None of the regulations by their terms require issue exhaustion or notify claimants of an issue exhaustion requirement.

[8] *Kellett v. Berryhill*, 2019 WL 2339968 (E.D. Penn. June 3, 2019)(finding the Appointments Clause issue is an important issue that goes to the validity of SSA proceedings which should be heard even if not properly preserved before the ALJ; discussing *Sims* rationale applied to Appointments Clause issues and finding no forfeiture, and digesting cases), Ready *v. Berryhill*, 2019 WL 1934874 (E.D. .Penn. April 30, 2019)(finding no forfeiture and that it would have been futile for Plaintiff to raise the challenge at the agency level), *Probst v. Berryhill*, –F.Supp.3d – (E.D. NC 2019)(noting majority of courts have determined challenge is forfeited by failure to raise issue before agency, digesting cases; relying on *Sims* and nonadversarial nature of Social Security hearings, finding it would be manifestly unfair to find waiver), *Bizzare v. Berryhill*, 364 F.Supp.3d 418 (M.D. Penn. 2019)(acknowledging result breaks from emerging consensus, noting no statute, regulation or judicial decision indicates that Social Security claimants forfeit judicial review of constitutional claims not raised at the administrative level, finding no authority suggesting that ALJs could resolve constitutional challenges to their own appointment, and finding no forfeiture occurred).

[9] The court also considered the limited space on the form used to request Appeals Council review and an estimate that it would take only ten minutes to complete the form.

do not apply to the non-adversarial process of the Social Security Administration. Fourth, the Social Security Administration does not notify claimants of an issue exhaustion requirement. *Sims*, 120 S.Ct. at 2084-86.

While *Sims* does not address issue exhaustion before the ALJ, the reasons cited by the Supreme Court to reject an issue exhaustion requirement before the Appeals Council also apply to the other steps in the Social Security Administration process. The statute still does not require issue exhaustion. In the 19 years since the *Sims* decision, the Social Security Administration has not enacted any regulation requiring issue exhaustion. The Social Security Administrative process remains non-adversarial and claimants, many of whom are unrepresented, are still not notified of any issue exhaustion requirement. Finally, the undersigned notes that a ruling that *Sims* does not apply to the other steps in the administrative process would result in an issue exhaustion requirement at some steps of the process and not at subsequent steps.

The court is persuaded that the cases finding that no forfeiture occurs when the claimant fails to raise the Appointments Clause issue before the Social Security Administration are better reasoned in light of the Supreme Court's analysis in *Sims*.

The court finds that at the time the decision in this case was entered, June 7, 2017, the ALJ who issued the decision under review was not appropriately appointed under the Appointments Clause of the Constitution. The court further finds that Plaintiff did not forfeit the Appointments Clause claim by failing to raise that issue before the Social Security

Administration. As a result, the ALJ's decision is REVERSED and the case is REMANDED to the Commissioner for further proceedings before a different constitutionally appointed ALJ.

SO ORDERED this 24th day of July, 2019.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE